# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs January 27, 2010

## VERIC DEAN OSGOOD v. STATE OF TENNESSEE

### Direct Appeal from the Circuit Court for Blount County
#### No. C-17360     David R. Duggan, Judge

---

### No. E2009-00757-CCA-R3-PC - Filed August 20, 2010

---

The Petitioner, Veric Dean Osgood, pled guilty in the Blount County Circuit Court to two counts of aggravated kidnapping, one count of aggravated robbery, and one count of aggravated burglary. He received a total effective sentence of thirty years in the Tennessee Department of Correction. Subsequently, he filed a petition for post-conviction relief, alleging that his trial counsel was ineffective and that his pleas were not knowingly and voluntarily entered. The post-conviction court denied the petition, and the Petitioner now appeals. Upon review, we affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Kevin W. Shepherd, Maryville, Tennessee, for the appellant, Veric Dean Osgood.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Rocky H. Young, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

The Petitioner agreed to waive his right to prosecution by indictment or presentment and was charged by information on two counts of especially aggravated kidnapping, one count of aggravated robbery, and one count of aggravated burglary. See Tenn. Code Ann. § 40-3-103(b). On May 30, 2007, the Petitioner pled guilty to the charged offenses. The plea

agreement provided for sentences of twelve years for each aggravated kidnapping conviction to be served concurrently; a twelve-year sentence for the aggravated robbery conviction to be served consecutively to the aggravated kidnapping sentences; and a six-year sentence for the aggravated burglary conviction to be served consecutively to the aggravated robbery sentence for a total effective sentence of thirty years.

At the guilty plea hearing, the State recited the following factual basis for the pleas:

> [T]he victims in this matter, Mr. and Mrs. Patterson, residents of the City of Friendsville, [would testify] that on the date appearing on the information – that being March the 22nd, 2007, that [the Petitioner], along with Co-Defendants Kerley and Patterson, entered their residence around the midnight hour . . . by way of ruse from Ms. Kerley that she was feigning car trouble and that she had a small child in the car. She gained initial entry into the residence. [The Petitioner] followed close behind, entered into a physical confrontation with Mr. Patterson, ultimately shoving the 70-some-odd-year-old gentleman to the ground and binding him, holding him at gunpoint. When Mrs. Patterson came out, he instructed her to be seated, held her at gunpoint as well. Co-Defendant Kerley began to ransack the residence, retrieving items of personalty from the person of Mr. Patterson, as well as items from the household; to wit, change, personal items such as shoes, car keys, et cetera.
>
> They then stole the elderly couple's vehicle and fled the scene. They were later apprehended in the couple's vehicle – all three co-defendants were later apprehended in the vehicle with items belonging, in fact, to the victims.

Subsequently, the Petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective and that his guilty pleas were not knowingly and voluntarily entered. In support of his claims, the Petitioner alleged that he was erroneously advised by counsel that he would have to serve only thirty percent of his thirty-year sentence in confinement.

At the post-conviction hearing, the Petitioner testified that he and counsel had numerous discussions regarding whether the Petitioner should plead guilty. The Petitioner maintained that he had been "threatened" that if he proceeded to trial, he faced eighty-five

years in prison. The Petitioner said trial counsel showed him a chart which explained the potential sentences in different ranges, but he did not understand what he was being shown.

The Petitioner stated that trial counsel told him that if he accepted the plea agreement, he could be released after serving eight years, which was approximately thirty percent of his thirty-year sentence. The Petitioner said that after he pled guilty and went to prison, he learned that because he had no prior felony convictions, he was "perfectly qualified for not only the low range of eight to twelve . . . [but] also qualified for concurrent [sentencing]."

The Petitioner said he pled guilty believing "that they would go lenient on me, I would be shown mercy. And the mercy would come either through the percentage or the year amount." He stated that trial counsel advised him that he would be eligible to get out of prison in eight years if he "kept his nose clean" but that his early release was not guaranteed.

The Petitioner acknowledged that the agreement provided that he would be eligible for release after serving eighty-five percent of his sentence in confinement. However, he said that counsel explained to him that eighty-five percent of his sentence was the maximum time he would be required to serve. The Petitioner said he would not have entered guilty pleas had he known that he would have to serve eighty-five percent of his aggravated kidnapping sentences in confinement before becoming eligible for release. He acknowledged that counsel "[b]riefly" reviewed the plea agreement form with him before he signed it.

The Petitioner stated that he became further confused about the terms of his guilty pleas when the trial court referred to the charging instrument as an indictment even though the Petitioner had actually waived his right to an indictment and was being charged by information. He said he waived his right to an indictment believing it would prevent the State from seeking a longer sentence.

The Petitioner said that the State made the plea offer two weeks before he accepted it and that he initially refused the offer. However, based upon trial counsel's advice and his fear of receiving a longer sentence if convicted at trial, he eventually decided to accept the State's offer. He said counsel told him that a trial would not "be a good idea. That he wasn't a paid lawyer and that his wife was pregnant and by the time we went to trial his wife's baby would be due and he wouldn't have the time or the access or the ability to properly represent me in a trial." The Petitioner said he was also told that he faced a potential sentence of eighty-five years, and he believed it was in his best interest to accept a plea agreement with a thirty-year sentence and the possibility of release after eight years.

Petitioner's trial counsel testified that he was appointed to represent the Petitioner. He averred that at no time during his representation did he intimate that the Petitioner might be

released after serving eight years in confinement. Trial counsel said that the Petitioner was a standard Range I offender and that he faced a potential maximum sentence of forty-two years.

Trial counsel said the State had "a particular interest" in the case because the elderly victims were the grandparents of one of the co-defendants, they had sustained serious physical injury during the offense, and the case had received "significant media attraction." The State also threatened to try the counts separately to "bump [the appellant] up into a different range." After plea negotiations began, the State told counsel that if the Petitioner did not plead guilty, the prosecutor would go back before the grand jury and seek further felony charges against the Petitioner. Counsel said he attempted to negotiate a plea involving a sentence less than thirty years, but the State would not agree to a lesser sentence.

Trial counsel said he was in contact with the Petitioner no less than thirteen times during his representation and that he reviewed the plea agreement with the Petitioner. Trial counsel said the Petitioner understood the sentences he was receiving and knew some of the sentences were to be served at eighty-five percent. Trial counsel said he made a graph that depicted the State's offer, including the ranges of punishment and the lengths of sentences. On the graph, which was introduced at the post-conviction hearing, trial counsel wrote that the Petitioner would serve 15.6 years in confinement if he served eighty-five percent of his aggravated kidnapping sentences and thirty percent of his aggravated robbery and aggravated burglary sentences.

Trial counsel said that he received discovery from the State, which included statements as well as photographs of the victims and of the items recovered. He said the Petitioner initially wanted to fight the charges. However, the Petitioner was unable to meet his $300,000 bond. Additionally, one of the Petitioner's co-defendants pled guilty, and counsel advised the Petitioner that the co-defendant could "turn state's evidence" against him. Trial counsel denied ever telling the Petitioner that counsel's wife's pregnancy would affect his representation.

At the conclusion of the hearing, the post-conviction court found that counsel was not ineffective and that the Petitioner's pleas were knowingly and voluntarily entered. Specifically, the court found that counsel was credible and that there was no proof, other than the Petitioner's bare assertions to support his allegations of ineffective assistance. The court found that the Petitioner's claims were belied by the transcript of the guilty plea hearing, which reflected that the Petitioner was advised he would have to serve eighty-five percent of two of his sentences. The transcript reflects that the following colloquy occurred regarding the sentences to be imposed:

The Court: All right. Do you understand, in counts one and two, you're going to receive a sentence of twelve years?

[The Petitioner]: Yes.

The Court: All right, sir. Do you also understand that in count three, you're going to receive another twelve-year sentence, do you understand?

[The Petitioner]: Yes.

The Court: And that sentence is going to run consecutive to count[s] one and two?

[The Petitioner]: Yeah.

The Court: And do you understand in the last count of the indictment, you're going to receive a six-year sentence, and that sentence is going to run consecutive to count one, two, and three. And this effectively gives you a 30-year sentence; do you understand that?

[The Petitioner]: Yes.

The Court: You're eligible for release on three of these sentences at 85 percent; do you understand that? Or maybe two of these sentences . . . .

[The State]: Two of them, Your Honor.

The Court: Two of these sentences at 85 percent; do you understand that?

[The Petitioner]: Yes

The Court: That doesn't mean you'll be released at 85 percent, do you understand?

[The Petitioner]: Right. Yes.

The Court: That means that's the first time you'll be eligible for being released. With regard to the burglary conviction and the other conviction, you'll be eligible for release at 30 percent; do you understand?

[The Petitioner]: Yes.

The Court: And again, that doesn't mean that you're going to be released; that means you'll just be considered for release. Do you understand?

[The Petitioner]: Yes.

The Court: Do you understand that the effect of this sentence is to give you 30 years in the State penitentiary? Do you understand?

[The Petitioner]: Yes.

On appeal, the Petitioner challenges the post-conviction court's ruling.

## II. Analysis

Initially, we note that the State contends that the Petitioner's notice of appeal was untimely. We agree. The record reveals that the post-conviction court denied the petition on January 28, 2009, and the Petitioner filed his notice of appeal on April 3, 2009. Rule 3(b) of the Tennessee Rules of Appellate Procedure provides that a criminal defendant may appeal to this court following "a final judgment in a . . . post-conviction proceeding." Rule 4(a) of the Tennessee Rules of Appellate Procedure instructs that

> the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from; however, in all criminal cases the "notice of appeal" document is not jurisdictional and the filing of such document may be waived in the interest of justice.

Clearly, the Petitioner's notice of appeal was filed beyond the thirty-day time limit. However, this court may waive the timely filing. In the interest of justice, we will address the petitioner's concerns.

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Notably,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

To pass constitutional muster, a guilty plea must be made voluntarily, understandingly, and knowingly. Hicks, 983 S.W.2d at 246 (citing Boykin v. Alabama, 395 U.S. 238, 244

(1969)); see also State v. Mackey, 553 S.W.2d 337, 341 (Tenn. 1977). To determine the voluntariness and intelligence behind a guilty plea, the court must look to various circumstantial factors, i.e.,

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). Furthermore, the petitioner should understand the direct consequences of his guilty plea, i.e., the penalty to be imposed. Id. In determining whether a petitioner's guilty plea was knowing and voluntary, this court must look at the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). "This court is bound by the post-conviction court's findings unless the evidence preponderates otherwise." Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

The post-conviction court noted:

> In making his argument, Petitioner relies primarily on two components of the transcribed guilty plea: (1) He claims that, at p. 7 of the transcript, the Court made reference to serving thirty percent of his burglary conviction "and the other conviction," and (2) that the Court referred to the charging instrument as an indictment rather than an information. He claims that, somehow, these two facts support him in his alleged belief that he was eligible for release after having served just thirty percent of his sentences, and/or suggest that somehow he was confused by what the Court said.

The post-conviction court found that the transcript of the guilty plea hearing belied the Petitioner's contentions. The court noted that the Petitioner's guilty pleas were clearly and unambiguously explained to him, including which sentences were concurrent, which were consecutive, and the percentage of each sentence which was to be served in confinement. Additionally, the court found that the Petitioner was aware that he had an effective thirty-year sentence. There is nothing in the record to preponderate against the post-conviction court's

findings. Accordingly, we conclude that the Petitioner was clearly informed regarding the sentences he was receiving as a result of his guilty pleas. Therefore, we agree with the post-conviction court that counsel was not ineffective in his representation of the Petitioner and that the Petitioner's guilty pleas were knowingly and voluntarily entered.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____

NORMA McGEE OGLE, JUDGE
